**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1376. ANTONIO BURCH v. STF FOODS, INC.

COOMER, Judge.

Antonio Burch appeals a superior court order affirming a decision by the Appellate Division of the State Board of Workers' Compensation (the "Board") in favor of his employer Stafford Foods, Inc., and its insurance company, New Hampshire Insurance Co. (collectively, "STF"). As relevant to the instant appeal, the Board's award reversed the ALJ's finding that Burch was entitled to disability benefits because the Board found that the primary cause of his termination was insubordination, and not work-related injuries or limitations. On appeal, Burch alleges the Board misapplied the "any evidence" standard to find he failed to prove his loss of earning capacity was attributable to his compensable work injuries, and

that he was terminated for disobeying instructions to avoid lifting in the workplace, which is directly related to his work injuries. Finding no error, we affirm.

"When reviewing awards in workers' compensation cases, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the Board." *JMJ Plumbing v. Cudihy*, 319 Ga. App. 158, 158 (735 SE2d 148) (2012) (punctuation and footnote omitted). Viewed in that light, the record shows that Burch worked at a Wendy's fast food restaurant operated by STF from mid-October, 2012 to December 19, 2013, where his duties included working as a fry cook, sandwich maker, chili cook, cashier, and clean-up. In early January 2013, while at work, Burch injured his upper back while attempting to move a stock pot full of chili. On January 21, 2013, Burch strained his eyes and upper back/shoulder area after trying to lift a trash bag into a dumpster. In early February 2013, Burch went to a walk-in clinic where he was given a prescription for pain killers, told to take off work for three days, and instructed not to lift over 15 pounds for a period of a week. Following the January incidents and visit to the clinic, Burch returned to work.

On June 27, 2013, Burch aggravated his existing back/shoulder injuries when a manager braced herself for balance on Burch's back while he knelt down on the

floor to clean out a cooler. Burch's supervisor prepared an incident report that same day and sent him for a drug test. The test came back negative, and Burch returned to work. On November 19, 2013, Burch was attempting to unload supplies when an entire stack of boxes collapsed on his head and chest, further straining his back that same day. On December 19, 2013, STF informed Burch that he was being terminated for insubordination related to his continuing to lift things at work despite being instructed on multiple occasions by his supervisor against any heavy exertion. For example, after the January 2013 injury, Burch was trained to perform less physically demanding tasks to minimize the risk of further injuries and to ensure that he could continue to work the same number of hours. Following the November 19, 2013 incident, Burch's supervisor gave him specific instructions to remain at his work station while on duty. The supervisor also told Burch not to lift anything unless given permission to do so by a member of management. However, on November 23, 2013, one of Burch's managers witnessed him restocking supplies. Burch's termination notice indicates that he was fired for insubordination in that he had "been told on several occasions not to lift because of back problems, but he continued to do so any way."

Burch filed a worker's compensation claim seeking temporary partial disability ("TPD") benefits from January 21, 2013, through December 19, 2013, temporary total disability ("TTD") benefits from December 20, 2013, onwards, and medical expenses. Following a hearing, the ALJ found, in pertinent part, that Burch had suffered injuries to his neck and upper back as a direct result of the work accidents on January 21, 2013 and November 19, 2013. Thus, the ALJ found STF responsible for Burch's medical expenses related to these two incidents, and appointed him an authorized treating physician.[1] The ALJ, however, rejected Burch's request for TPD benefits from the time of his January 21, 2013 injury until his termination on December 19, 2013, because Burch continued to work following his work-related accidents, and his average weekly wage actually increased during this period. Next, the ALJ found that the "main reason" for Burch's termination was his insubordination, namely, Burch's refusal to heed his supervisor's instructions to avoid lifting at his workplace. Because these instructions arose from Burch's restricted work capacity caused by his previous on-the-job accidents, the ALJ found that Burch stopped working and became disabled because of his work injuries. Further, the ALJ found that Burch has remained disabled

---

[1] The ALJ reserved the issue of the compensability of specific items of Burch's medical expenses for a future hearing, if needed. Additionally, the ALJ rejected Burch's requests for medical benefits for a low back condition and possible head injury.

since July 2014 based on medical reports, and therefore, he was entitled to TTD benefits from December 20, 2013 onwards. The ALJ assessed a 15 percent penalty on the accrued TTD benefits because STF failed to file a proper and timely notice to controvert.

STF appealed this award to the Board. "After a review of the record as a whole," the Board adopted in part and reversed in part the ALJ's award. The Board upheld the ALJ's award of medical benefits and the appointment of an authorized treating physician. However, the Board reversed the award of TTD benefits, concluding that the ALJ "erred in finding that a relationship between [Burch's] work-related injuries and his stopping work on December 19, 2013, was conclusive as to whether [Burch] carried his burden of proving disability." As a result, the Board found that Burch failed to prove any loss of earning capacity was attributable to his compensable work injuries.

Burch appealed the Board's award to the superior court. The superior court affirmed the Board's decision, noting that there was "sufficient, competent evidence in the record to support the [Board's] findings[.]" Burch then filed an application for discretionary review, which we granted. This timely appeal followed.

1. Burch argues that the superior court erred in affirming the award. Specifically, he argues that the Board should not have reversed the ALJ's finding that he was terminated for reasons connected to his work injury, and he is therefore entitled to TTD benefits. We disagree.

In all workers' compensation claims, the employee bears the burden of establishing that he sustained a disabling injury arising out of and in the course of his employment. *Dasher v. City of Valdosta*, 217 Ga. App. 351, 352 (1) (457 SE2d 259) (1995). "An employee is entitled to total disability benefits under OCGA § 34-9-261 if the employee can show by a preponderance of credible evidence that he or she has experienced a loss of earning capacity due to the injury and not due to the employee's unwillingness to work or to economic conditions of unemployment." Id. at 352-353 (citation and punctuation omitted).

> Here, the ALJ awarded Burch total disability benefits by finding
>
> that the main reason [for Burch's firing] was insubordination, but I find that this was because of his condition because he disobeyed instructions to stay within his lifting restrictions. The law says that if a worker is fired for reasons that are connected to his work injury, then he can prove he stopped work because of his injury. . . . I therefore find that the reason he stopped work was because of his compensable condition.

6

The Board reversed and denied Burch's claim for TTD, finding that

> [T]he preponderance of the competent and credible evidence shows that the Employer/Insurer had been making light duty available to the Employee for or least several weeks after the compensable injuries and, as the administrative law judge found, the "main reason" for the Employee's termination was insubordination. The proximate cause of the termination was neither the injuries nor the need for light duty, which were indirect causes at best, but the Employee's disobeying instructions to limit himself to that light duty. Accordingly, we find that the Employee failed to prove any loss of earning capacity was attributable to the compensable work injuries and reverse those portions of the administrative law judge's award finding to the contrary.

In evaluating Burch's claims, we employ the following standard of review.

> [W]hen the Board reviews an ALJ's grant or denial of workers' compensation benefits, the Board is authorized to vacate an ALJ's findings of fact and conclusions of law as unsupported by a preponderance of the competent and credible evidence, and to substitute its own alternative findings. And in so doing, the Board is also authorized to assess witness credibility, weigh conflicting evidence, and draw different factual conclusions from those reached by the ALJ who initially heard the dispute. . . . In stark contrast, however, neither this Court nor the superior court has any authority to substitute itself as a fact finding body in lieu of the Board. Indeed, as a reviewing court, our

role is not to return to the findings of the ALJ and examine whether that decision was supported by a preponderance of the evidence, but is instead to review the Board's award for the sole purpose of determining if whether its findings are supported by any record evidence. If this Court answers that question in the affirmative, the Board's findings are conclusive and binding, regardless of whether we would have reached the same result if given the opportunity to weigh the evidence in the first instance.

*Emory Univ. v. Duval*, 330 Ga. App. 663, 665-667 (768 SE2d 832) (2015) (punctuation and footnotes omitted).

We begin our analysis by noting that the proximate cause of an employee's termination is a factual determination reserved for the ALJ or the Board, not this Court. *Padgett v. Waffle House, Inc.*, 269 Ga. 105, 107 (3) (498 SE2d 499) (1998). Because neither this Court nor the superior court may "substitute itself as a fact finding body in lieu of the Board," we will affirm if the Board's "findings are supported by any record evidence." *Emory*, 330 Ga. App. at 666.

Here, the record provides ample evidence to support the Board's determination that the proximate cause of Burch's firing was insubordination. Specifically, the record shows that after Burch's first claimed injury, his manager instructed him in writing on January 22, 2013 not to lift anything and to ask other employees for

8

assistance. It also shows Burch had a meeting with management about not lifting anything heavy while at work to keep him from re-injuring his back. Despite these instructions, Burch continued to lift heavy items including a bag of trash on January 27, 2013, and boxes of fries on November 19, 2013. Burch testified at the hearing that STF terminated him on December 19, 2013 for insubordination because he continued to "lift products and other things." Furthermore, Burch's Separation Notice explicitly stated the reason for his termination was: "Insubordination, Antonio has been told on several occasions not to lift because of back problems, but he continued to do so any way." Finally, in a typewritten statement attached to Appellant's Separation Notice, Burch's manager explained the reason for his termination was that

> Antonio took it upon himself to continue to try to lift different product[s] in the store; although he had been told by every manager that he was not to lift. . . . After he would lift different objects you would see him hold his back; but he wouldn't say anything to management about it hurting. Antonio was then taken into the office again. He was asked why did he continue to be hard headed. . . . On 11-22-13, Tonjanika James took Antonio into the office for the last time. I asked him again "why do you continue to disobey management?" He was told not to lift anything else unless a member of management has given him permission to do so. He stated that the members of management had not been asking him to go and lift anything. I told him that I would not be having this conversation with him again.

9

Accordingly, because there is evidence in the record to support the Board's finding that Burch was terminated for insubordination, the superior court did not err in affirming the award.

2. Burch next argues that the Board erred when it held that under these circumstances, in order to recover TTD, he was required to show that he undertook a diligent, but unsuccessful job search. However, because the Board was authorized to find, as discussed in Division 1, that Burch did not prove he stopped working as a result of his injuries, this contention is moot.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur*.